IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA CIAFFARAFA, | ) | |
| | ) | |
| Claimant, | ) | No. 17 CV 50168 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| NANCY BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Patricia Ciaffarafa ("Claimant") seeks review of the final decision of Respondent Nancy Berryhill, Acting Commissioner of Social Security ("the Commissioner"), terminating Claimant's Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 12.] The parties have filed cross-motions for summary judgment [ECF Nos. 15 and 19] pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the Commissioner's Motion for Summary Judgment [ECF No. 19] is granted and Claimant's Motion for Summary Judgment [ECF No. 15] is denied. The decision of the Commissioner is affirmed.

## I. PROCEDURAL HISTORY

On May 29, 2009, the Commissioner approved Claimant's application for DIB after determining that she had disabling epilepsy since March 29, 2007 (the "comparison point decision" or "CPD"). (R. 61–69.) On September 3, 2013, the Commissioner re-evaluated Claimant's application and determined that she was no longer disabled because her condition had improved. (R. 70.) The determination was upheld upon reconsideration on August 7, 2014, after which

Claimant timely requested an administrative hearing before an administrative law judge ("ALJ"). (R. 91, 96.) On December 8, 2015, Claimant, represented by counsel, appeared and testified at an administrative hearing before ALJ Roxanne J. Kelsey. (R. 29.) The ALJ also heard testimony from Claimant's husband, Richard Ciaffarafa, and vocational expert ("VE") Aimee Mowery. (*Id.*)

On January 28, 2016, the ALJ issued a written decision finding that Claimant was no longer disabled as of September 1, 2013. (R. 16–23.) The opinion followed the eight-step sequential evaluation process used in medical improvement cases. *See* 20 C.F.R. § 404.1594(f). At step one, the ALJ found Claimant had not engaged in substantial gainful activity ("SGA") through September 1, 2013. (R. 18.) The ALJ found Claimant had the severe impairments of seizures and carpal tunnel syndrome. (*Id.*) At step two, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1594(f)(2)). (*Id.*) At step three, the ALJ found medical improvement had occurred as of September 1, 2013. (*Id.*) At step four, the ALJ found Claimant's medical improvement was related to her ability to work. (*Id.*) The ALJ then skipped step five because she found medical improvement related to Claimant's ability to work. At step six, the ALJ found Claimant continued to have severe impairments of seizures and carpal tunnel syndrome. (R. 18-19.)

The ALJ next assessed Claimant's residual functional capacity ("RFC")[1] as of September 1, 2013, and found Claimant had the RFC to perform a full range of work at all exertional levels involving: frequent but not constant use of either upper extremity for fine or gross manipulation; no more than occasional exposure to hazards such as dangerous moving machinery or unprotected heights; in a work environment requiring no more than occasional and superficial contact with the

---

[1] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

general public; and permissive of "off task" episodes of no more than four minutes duration about twice per month. (R. 19.) At step seven, the ALJ concluded that Claimant was unable to perform past relevant work. (R. 21.) Finally, at step eight, considering Claimant's age, education, work experience, and RFC, the ALJ found that Claimant was able to perform a significant number of jobs in the national economy as of September 1, 2013, including hand packager, inspector, or sorter. (R. 22.) Therefore, the ALJ found that Claimant's disability ended September 1, 2013. (*Id.*) The Appeals Council denied Claimant's request for review on April 28, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the

conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts the ALJ made three errors. First, Claimant argues that the ALJ erred at step three by failing to recognize or adequately consider that Claimant allegedly suffers from both convulsive and non-convulsive seizures. Second, Claimant contends the ALJ improperly discounted the opinion of her treating physician. Third, Claimant asserts that remand is warranted based upon the Appeal's Council's failure to consider new and material evidence. The Court addresses each of these arguments in turn.

**A.     Step Three Determination**

At step three of the sequential evaluation, the ALJ determined that Claimant's seizure disorder did not satisfy the requirements of a listing as of September 1, 2013. (R. 18.) Claimant disputes that finding and argues that the ALJ failed to properly consider whether her impairment satisfied the requirements of Listings 11.02 and 11.03 because the ALJ did not distinguish whether she had convulsive seizures or non-convulsive seizures. [ECF No. 15, at 4–7.] The Court disagrees with Claimant.

At the time of the ALJ's decision, Listing 11.02 provided:

Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure patter, including all associated phenomena;

4

occurring more frequently than once a month in spite of at least three months of prescribed treatment.

A. Daytime episodes (loss of consciousness and convulsive seizures) or

B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Part 404, Subpt. P, App. 1, § 11.02. Listing 11.03 provided:

Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least three months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpt. P., App. 1, § 11.03.

"To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment," and the claimant bears the burden to make this showing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Here, the ALJ concluded that Claimant was suffering from "partial seizures," a term which is never defined in the ALJ's decision.[2] Claimant argues that "the designation of what type of the seizures [she] was experiencing and how often she was experiencing each type of seizure[ ] goes directly to the heart of the applicable listings," and the ALJ's "failure to delineate that [Claimant] was experiencing two separate type[s] of seizures is cause for remand." [ECF No. 15, at 6.] The Court is not persuaded by this argument.

Claimant has not met her burden of presenting medical findings that match or equal in severity all the criteria specified by a listing. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and

---

[2] Claimant's treating physicians define Claimant's seizures as complex partial seizures and state that she does not suffer from generalized seizures. (R. 495, 498, 570, 576.) Listing 11.03 states that non-convulsive epilepsy includes petit mal, psychomotor, or focal seizures. Complex partial seizures are also called "focal onset impaired awareness seizures." (https://www.epilepsy.com/learn/types-seizures/focal-onset-impaired-awareness-seizures-aka-complex-partial-seizures).

5

evidence to prove their claim of disability.") (citing 20 C.F.R. § 404.1512(c)). The evidence Claimant provides to support her allegation that she was suffering convulsive seizures is her self-reported seizure log, her husband's testimony, her testimony, and the opinion of treating neurologist Gene Neri, M.D, which, as discussed below, the ALJ properly discounted. The ALJ adequately explained why she concluded that this subjective evidence was inconsistent with the objective clinical record. Claimant points to no objective medical evidence that supports her contention that she meets the requirements for Listing 11.02 or suffers from more than one convulsive seizure a month. To the contrary, Claimant's treating neurologist for the relevant period, Steven Lekah, M.D., noted that she only had partial seizures and had no generalized seizures.[3] (R. 490-498.) State medical consultant Victoria Dow, M.D., also found that Claimant's current frequency of seizures no longer met listing level. (R. 363.)

The ALJ properly gave Claimant's seizure log little decisional weight, as her report of seizure activity is inconsistent with the objective medical records of Dr. Lekah and treating physician Mabria Loqman, M.D. (R. 20.) Even if the ALJ accepted Claimant's seizure log and testimony at face value, she still has not fulfilled her burden of providing medical findings that match or equal in severity the criteria of the seizure listings. Claimant testified that she experiences convulsive seizures "about once a month." (R. 48.) This does not match or equal the severity of Listing 11.02, which requires convulsive seizures "occurring more frequently than once a month" with either daytime episodes or nocturnal episodes manifesting residuals which interfere significantly with activity during the day. 10 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 11.02.

Listing 11.03 specifies non-convulsive seizures occurring more than once weekly. Claimant does not show a pattern of non-convulsive seizures occurring more than once weekly as

---

[3] Generalized seizures involve both hemispheres of the brain and encompass "grand mal seizures." http://epilepsychicago.org/epilepsy/seizure-types/generalized-seizures/

required in Listing 11.03 for non-convulsive seizures. With the exception of June 2015, Claimant's seizure log never shows that she had more than four seizures in a one-month period. Further, in July of 2013, Claimant reported to Dr. Lekah that she had only five partial seizures in the last six months, and she reported in May of 2015 that she had seizures at the rate of two to three episodes per month. (R. 368, 592.)

It is Claimant's burden to present medical findings to show she meets listing requirements, and she has not done so here. Claimant cites no objective evidence in the record that contradicts the treating sources or reviewing physician Dr. Dow's findings, and the Court has found none. Accordingly, the ALJ did not err at step three.

## B. The Treating Physician's Opinion

Claimant next argues that the ALJ erred in giving the decision of her treating physician "little decisional weight," thereby violating the "treating physician rule."[4] The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507-08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," and "can reject an

---

[4] Last year, the Social Security Administration ("SSA") adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

7

examining physician's opinion only for reasons supported by substantial evidence in the record." *Id.*; *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted). Even if a treating physician's opinion is not given controlling weight, the ALJ must still determine how much weight to give it. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014).

In November 2015, Dr. Neri, who had been treating Claimant since June 25, 2015, diagnosed Claimant with a seizure disorder and indicated that she had both convulsive and non-convulsive seizures. (R. 618.) Dr. Neri stated that he had reviewed Claimant's seizure log and found it to be consistent with his understanding of the frequency of her seizures. (*Id.*) The ALJ gave Dr. Neri's opinion "little decisional weight" because of the short time period during which he treated Claimant and the lack of corroboration in progress notes for the number and type of seizures indicated in Claimant's seizure log. (R. 20.) The Court finds that the ALJ did not err in discounting Dr. Neri's opinion.

First, Dr. Neri did not cite any evidence to support his statement that Claimant's pre-June 2015 reports of seizures were accurate, and he did not indicate whether he reviewed any previous medical records that would allow him to comment on her seizures prior to the time he began treating her. Claimant argues that Dr. Neri's August 2015 treatment note reflects that Claimant continued to have seizures, and that she was having them twice daily for two months. (R. 601-02.) This treatment note, however, is handwritten and is difficult to decipher, and does not clearly indicate that Claimant was having seizures twice daily for two months.[5] Even if the Court were to accept Claimant's interpretation of Dr. Neri's notes, however, the notes are inconsistent with Claimant's own seizure log, where she reports only two seizures in July of 2015 and two in August of 2015. (R. 607.) Dr. Neri stated that Claimant's seizure log was fully consistent with his

---

[5] The note appears to say "sl. v. sz 2/d x 2 mo."

8

knowledge of her seizure activity, yet his treatment notes (as interpreted by Claimant) do not match the seizure log he was given. Further, as noted above, he had only been treating Claimant for a little over four months[6] at the time he wrote his opinion, yet he opined on the frequency of Claimant's seizures from a time period during which he was not treating her. (R. 606-07.) Therefore, the ALJ properly gave little weight to Dr. Neri's opinion.

### C. The Appeals Council's Decision

Claimant's final argument on appeal is that remand is warranted because the Appeals Council committed an error of law in declining to review the ALJ's decision in light of the new evidence she supplied—a March 14, 2016, letter from Dr. Neri. (R. 622–23.) The Court's ability to review the Appeals Council's decision "is dependent on the grounds on which the Council declined to grant plenary review." *See Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015).

The Appeals Council, in determining whether to review a claim that has been denied by an ALJ, must evaluate additional evidence that the claimant submits, provided the evidence is both "new" and "material" and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); *Farrell v. Astrue*, 692 F.3d 767, 770-771 (7th Cir. 2012). The Council will then grant *de novo* review of the ALJ's decision only "if it determines based on the supplemented record that the ALJ's conclusions are contrary to the weight of the evidence." *Stepp*, 795 F.3d at 721.

Here, the Appeals Council indicated that it had "considered . . . the additional evidence . . . . [and] found that this information does not provide a basis for changing" the ALJ's decision. (R.

---

[6] Claimant points out that Dr. Neri had a previous treating relationship with Claimant from 1982-1995. However, this information was not before the ALJ. And, in any event, Dr. Neri did not have a treating relationship with Claimant during the relevant period. The ALJ properly relied on the progress notes of Drs. Lekah and Loqman's regarding the frequency of Claimant's seizures, as both treated her during the majority of the relevant period.

9

1–5.) The minimal information provided by the Appeals Council in its denial of Claimant's request for review does not allow the Court to conclude that the Council accepted the additional record as new and material evidence. *See Stepp*, 795 F.3d at 725. As the Seventh Circuit held in *Farrell*, the Court therefore proceeds on the assumption that the Appeals Council found the additional evidence not new and material and turns next to determining whether that finding is erroneous. *See id.* (citation omitted).

Evidence is "new," within the meaning of the regulations, if it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material" "if it creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725 (quotations omitted). Moreover, "if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision." *See* 20 C.F.R. § 416.1470(b). Here, there is no question that the letter from Dr. Neri is "new" because it post-dates the ALJ's January 28, 2016 hearing decision. The Court's focus, therefore, is on whether this new piece of evidence is "material."

Claimant argues that Dr. Neri's letter is material because it provides more background to his previous opinion, which the ALJ discounted. The letter includes conclusory statements such as "[Claimant] does not have the capacity to work," "[i]n no way can [Claimant] perform in a competitive environment as an employee in any job that I know of," and "she should be on disability, was on disability, and I have no understanding as to why she no longer continues to be on disability." (R. 622–23.) These are not medical opinions. Rather, they are akin to administrative findings reserved for the Commissioner. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). There is no obligation to credit a conclusory opinion from a physician regarding a

10

claimant's disability or capability to work. "[A] claimant is not entitled to disability benefits simply because her physician states that she is "disabled" or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

The letter further states that Dr. Neri had a long previous treating relationship with Claimant, from 1982-1995. (R. 622.) Claimant, however, was treated by different neurologists from 1995-2015. Dr. Neri's letter provides very little information on Claimant's seizures since September 1, 2013, which is the relevant time period in this case.

Dr. Neri does say that Claimant's complex partial seizures are not "controlled" and he indicates that he had recently changed her medical regimen in hopes of gaining better control. (*Id.*) The notion of "control" is relative and not necessarily helpful in the context of determining whether Claimant's seizures meet or equal a listing given the criteria specified in the listings. As discussed above, Claimant own testimony and the seizure activity reflected in her seizure log do not describe or document seizures that would meet or equal a listing. Neither do the objective medical records document that kind of activity. Dr. Neri's letter does nothing to move the needle in the context of that analysis.

At base, Dr. Neri's letter, while certainly new in a temporal sense, does not provide any information that might render it material. The ALJ gave little weight to Dr. Neri's original opinion because he had only been treating Claimant for four months and yet commented on her seizures during the years prior to his treatment, and his opinion was inconsistent with the objective medical record from that time period. (R. 20.) The new letter does not change the fact that Dr. Neri did not treat Claimant during the time of alleged medical improvement, nor does it offer any medical opinion on Claimant's current status or present new medical evidence that changes the nature or import of the evidence the ALJ reviewed.

11

In sum, Dr. Neri's letter consists primarily of conclusory statements that are not medical opinions, and what little information he does provide regarding Claimant's current seizure activity is not substantiated by any evidence. There is no information in Dr. Neri's letter that creates a reasonable probability that the Commissioner would have reached a difference conclusion had it been considered, and, accordingly, Dr. Neri's letter does not constitute material evidence.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The decision of the Commissioner is affirmed.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 21, 2018